■ In the Matter of BIRDIE M. BLOSE, Appellant. LOUIS L. LEVINE, as Industrial Commissioner, Respondent.— Decision affirmed, without costs. No opinion. Herlihy, P. J., Sweeney, Kane and Main, JJ., concur; Staley, Jr., J., dissents and votes to reverse in the following memorandum. Staley, Jr., J. (dissenting): Claimant had been denied benefits on the ground that she voluntarily left her employment without good cause. The Appeal Board reversed the referee's finding that claimant's termination by the employer was under nondisqualifying conditions. The only witnesses appearing before the referee were Joseph De Marco, the employer's personnel manager, and claimant. De Marco testified that claimant stopped working on May 12, 1972 after the president of the company observed her working in a "hot pants outfit"; that the president told De Marco to tell claimant to go home and change her outfit; that De Marco asked claimant to change into another outfit and that "she got mad and left"; that if she didn't go and change the president "would probably raise a big stink"; that it was a fact that claimant had worn shorts or a jump suit for a considerable period before the incident of May 12. The referee asked De Marco the following questions and received the following answers: " Q. Am I to understand then that she was told that she shouldn't come back unless she changed? A. He wanted her to go and put on another outfit, whether it be Bermudas or slacks. Q. But she couldn't continue? A. No, he didn't want her in the office or in the factory." Claimant testified that De Marco told her to go home and change and that " I had to wear slacks all summer"; that she was refused permission to talk to the president; that on May 12 she was wearing a jump suit which she had worn for several weeks prior thereto; that her suit was three inches longer than the outfits of several other girls; that she felt discriminated against because " they made one person wear slacks all summer whenever the rest didn't have to ". The board held that " It was the employer's prerogative to insist that claimant be attired properly during working hours. She was not justified in refusing to comply with the employer's rule, especially since the production workers were distracted from their own duties ". There is no evidence in the record that claimant's attire was not proper other than the opinion of the president expressed through the personnel manager. There was no rule in

existence specifying the mode of dress of the employees. There is no evidence that any workers in the company were "distracted from their own duties". (Presumably the president was distracted but the record doesn't even establish that as a fact.) In *Matter of Peck* v. *Stone* (32 A D 2d 506) the court, reversing a determination prohibiting the petitioner, a female attorney, from appearing in the City Court of Syracuse wearing a "Mini-Skirt", the hemline of which was approximately five inches above the knee, stated as follows (p. 507): "Whatever may be one's personal judgment as to the propriety of petitioner's dress, we are compelled to conclude that it has become an accepted mode of dress, not only in places of business or recreation, but, to the consternation of some, in places of worship. In assessing a given situation to determine whether a discretionary power has been improvidently exercised, we emphasize the time-honored rule of the requirement that the facts of each case must be examined with particular regard to these powers. In this connection we are presented with a record showing no lack of respect for the court and indeed, as conceded upon the argument, a complete lack of distraction or disruption caused by petitioner's appearance." Similarly, the record here is devoid of any evidence that claimant's appearance on the job caused any distraction or disruption among her coemployees. "To support a determination that the claimant voluntarily left her employment without good cause by provoking her discharge, there must be substantial evidence of such conduct which clearly, under ordinary circumstances, should be expected by the claimant to result in a dismissal or to support the employer's claim of provocation." (*Matter of Raven* [*Levine*], 40 A D 2d 128, 130.) In my opinion there is nothing in the record here to sustain such a finding and I would reverse and reinstate the referee's decision which stated as follows: "The credible evidence establishes that claimant had worn shorts and a jump suit for a considerable period of time during the course of her employment. The outfit she wore was considered acceptable. Other employees in the plant also wore shorts. On her last day, however, the employer decided that claimant must wear slacks and was told to go home and not return unless she wore slacks. In view of the practice of other employees to wear shorts and since claimant had been permitted to do so in the past, the employer's decision to now insist that claimant wear slacks appears to have been a change in the conditions of employment which were unilaterally made by the employer. The employer has the right to discharge claimant for any reason it considers sufficient. However, claimant had the right to wear any clothes that were proper and suitable for the job that she was working on. Since she had been permitted to wear the jump suit on other occasions, claimant also then had the right to insist on continuing to wear the same outfit which had been acceptable on prior occasions and was acceptable for other employees." The board's determination is not supported by substantial evidence and should be reversed.